DAVID RICKY BROOKSHIRE, Plaintiff v. NORTH CAROLINA DEPARTMENT OF TRANSPORTATION, DIVISION OF MOTOR VEHICLES, and NORTH CAROLINA DEPARTMENT OF CRIME CONTROL AND PUBLIC SAFETY, Defendants

No. COA05-955

(Filed 19 December 2006)

**1. Employer and Employee— whistleblower claim—cooperating with SBI investigation**

The trial court did not abuse its discretion by denying defendants' motions for a directed verdict and judgment nov on a whistleblower claim where the evidence showed that plaintiff had engaged in protected activity in cooperating with an SBI investigation of corruption in DMV, that he was terminated after his supervisors learned of his actions, that there was more than a scintilla of evidence that his alleged job misconduct was merely a pretext for termination, and that the protected activities were a substantial or motivating factor in that termination. N.C.G.S. § 126-85.

**2. Judgments— interest—refiled complaint—back pay**

Interest on a judgment should not have been awarded for the time between the voluntary dismissal of a complaint and the refiling of the complaint, and should not have been awarded on a back pay award against the State.

BROOKSHIRE v. N.C. DEP'T OF TRANSP.

[180 N.C. App. 670 (2006)]

Appeal by defendants from judgment entered 23 November 2004 by Judge Dennis J. Winner in the Superior Court in Haywood County. Heard in the Court of Appeals 15 August 2006.

*Attorney General Roy Cooper, by Assistant Attorney General Allison A. Pluchos and Special Deputy Attorney General Hal F. Askins, for the State.*

*Biggers & Hunter, P.L.L.C., by John C. Hunter, for plaintiff-appellee.*

HUDSON, Judge.

Plaintiff alleged violations of N.C. Gen. Stat. §§ 126-84, 5 ("the whistleblower statute") and sought injunctive relief and monetary damages. The jury found for the plaintiff. Defendants moved for judgment notwithstanding the verdict, which motion the court denied. Defendants appeal. As discussed below, we affirm in part, reverse in part and remand.

Plaintiff began working for the Department of Motor Vehicles ("DMV") in June 1979 and rose to the position of lieutenant in District VIII of the DMV. In August 2000, plaintiff's supervisor Captain Gary Ramsey reported to Lieutenant Colonel Mike Sizemore at DMV headquarters in Raleigh that plaintiff had falsified documents and misused state property. Lt. Col. Sizemore then requested Internal Affairs Captain Carl Pigford to investigate the charges against plaintiff. Capt. Pigford completed the investigation and reported his results to a DMV executive management team. Capt. Pigford determined that plaintiff violated DMV policy and state law by: using his official position to solicit services, gifts and gratuities; altering, voiding and reducing an overweight citation as a favor for the vehicle's owner; using a state-owned vehicle for private purposes; conducting personal business while on state time; taking unauthorized leave from work; failing to report to work properly dressed; and falsifying time documents.

On 6 October 2000, Lt. Col. Sizemore held a pre-disciplinary hearing with plaintiff. Plaintiff admitted to using his official position to solicit services, gifts and gratuities, using a state-owned vehicle for personal purposes, and conducting personal business on state time. The executive management team recommended that plaintiff be terminated. Plaintiff received notice of the decision on 11 October 2000; he filed no internal grievance or appeal in connection with his termination.

On 10 October 2001, plaintiff filed the underlying action alleging that he was terminated as retaliation for engaging in activity protected under the whistleblower statute, specifically for cooperating with a State Bureau of Investigation ("SBI") investigation into corruption in District VIII of the DMV. On 24 October 2002, following discovery and trial preparation, plaintiff filed a voluntary dismissal without prejudice. On 23 October 2003, plaintiff timely re-filed the complaint against the present defendants. In October 2004, the jury returned a verdict in favor of plaintiff on the issue: whether or not plaintiff was terminated from DMV because he talked to the SBI? The court ordered that plaintiff be reinstated to his former position with back pay and benefits, and awarded interest and attorney's fees.

[1] Defendants first argue that the court abused its discretion by denying their motion for a directed verdict at the close of all evidence. We disagree.

The standard of review on denial of a directed verdict is well-established:

> On appeal, the standard of review on a motion for directed verdict "is whether, 'upon examination of all the evidence in the light most favorable to the nonmoving party, and that party being given the benefit of every reasonable inference drawn therefrom, the evidence is sufficient to be submitted to the jury.' " *Stamm v. Salomon*, 144 N.C. App. 672, 679, 551 S.E.2d 152, 157 (2001) (quoting *Fulk v. Piedmont Music Ctr.*, 138 N.C. App. 425, 429, 531 S.E.2d 476, 479 (2000)). "The party moving for a directed verdict bears a heavy burden in North Carolina." *Edwards v. West*, 128 N.C. App. 570, 573, 495 S.E.2d 920, 923 (1998). A motion for directed verdict should be denied where " 'there is more than a scintilla of evidence supporting each element of the plaintiff's case.' " *Stamm*, 144 N.C. App. at 679, 551 S.E.2d at 157 (quoting *Little v. Matthewson*, 114 N.C. App. 562, 565, 442 S.E.2d 567, 569 (1994), *aff'd*, 340 N.C. 102, 455 S.E.2d 160 (1995)). In addition, when the decision to grant a motion for directed verdict "is a close one, the better practice is for the trial judge to reserve his decision on the motion and submit the case to the jury."

*Wilson v. Burch Farms, Inc.*, 176 N.C. App. 629, 636, 627 S.E.2d 249, 255 (2006). Here, plaintiff contends that he was terminated in violation of the whistleblower statute, which provides in pertinent part:

(a) No head of any State department, agency or institution or other State employee exercising supervisory authority shall discharge, threaten or otherwise discriminate against a State employee regarding the State employee's compensation, terms, conditions, location, or privileges of employment because the State employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, any activity described in G.S. 126-84, unless the State employee knows or has reason to believe that the report is inaccurate.

N.C. Gen. Stat. § 126-85 (2006). To establish a prima facie case under N.C. Gen. Stat. § 126-85, a plaintiff must establish that "(1) [plaintiff] engaged in protected activity, (2) followed by an adverse employment action, and (3) that the protected conduct was a substantial or motivating factor in the adverse action." *Kennedy v. Guilford Tech. Community College*, 115 N.C. App. 581, 584, 448 S.E.2d 280, 282 (1994), *overruled in non-pertinent part, Newberne v. Dep't of Crime Control & Pub. Safety*, 359 N.C. 782, 618 S.E.2d 201 (2005) (quoting *McCauley v. Greensboro City Bd. of Educ.*, 714 F. Supp. 146, 151 (M.D.N.C. 1987)). Once a defendant presents evidence that a plaintiff's termination "is based on a legitimate non-retaliatory motive, the burden shifts to the plaintiff to present evidence . . . that his actions under the Act were a substantial causative factor" in the termination. *Hanton v. Gilbert*, 126 N.C. App. 561, 571-72, 486 S.E.2d 432, 439, *disc. review denied*, 347 N.C. 266, 493 S.E.2d 454 (1997) (*quoting Aune v. University of North Carolina*, 120 N.C. App. 430, 434-35, 462 S.E.2d 678, 682 (1995), *disc. review denied*, 342 N.C. 893, 467 S.E.2d 901 (1996)).

Here, the evidence showed that plaintiff engaged in protected activity in cooperating with the SBI's investigation of corruption in the DMV, and was terminated after his supervisors learned of this activity. We therefore consider whether plaintiff presented more than a scintilla of evidence that the protected conduct was a substantial or motivating factor in his termination. Plaintiff presented evidence that in his twenty years of employment with the DMV, he had received regular promotions and received satisfactory or better performance reviews. He also presented evidence of the following: that the allegation of personal use of a state-owned vehicle was based on an incident which the DMV was aware of for eight months, but that the DMV took no action until after learning of the protected activity; that the charge of falsifying his time card by three hours was merely an error; that the charge of altering an overweight citation was actually cor-

rection of a mathematical error; that the solicitation of gifts and gratuities was directed by his supervisor, Capt. Ramsey; that other DMV employees benefitted from funds raised by these solicitations and no action was taken to stop the solicitations until after plaintiff was terminated; that the DMV ignored plaintiff's statements that Capt. Ramsey controlled these solicitations; and that no other DMV employees were subject to investigation or action related to these solicitations for two years following plaintiff's termination. Defendants presented no evidence other than what they could elicit during cross-examination of plaintiff's witnesses.

This evidence constituted more than a scintilla of evidence that plaintiff's alleged job misconduct was merely a pretext for his termination, and that plaintiff's protected activities were a substantial or motivating factor in that termination. In the light most favorable to plaintiff, and giving him the benefit of every reasonable inference drawn therefrom, the evidence was sufficient to be submitted to the jury. Thus, the court did not err in denying defendants' motion for directed verdict. We overrule this assignment of error.

Defendants also argue that the court abused its discretion in denying their motion for JNOV. We disagree.

Because a "motion for JNOV is essentially a renewal of a motion for a directed verdict . . . . [t]he standard to be employed by a trial judge in determining whether to grant a judgment notwithstanding the verdict is the same standard employed in ruling on a motion for a directed verdict." *State Props. v. Ray*, 155 N.C. App. 65, 72, 574 S.E.2d 180, 185-86 (2002) (internal citations quotation marks omitted). Thus, for the reasons discussed *supra*, we overrule this assignment of error.

**[2]** Defendants next argue that the court abused its discretion in ordering payment of interest on the judgment sum from 10 January 2001 and on back pay. We agree.

Defendants contend that because plaintiff voluntarily dismissed his complaint on 24 October 2002 and did not re-file until 23 October 2003, no lawsuit was pending between the parties during that period. Pursuant to N.C. Gen. Stat. § 24-5 "any portion of a money judgment designated by the fact finder as compensatory damages bears interest from the date the action is commenced until the judgment is satisfied." N.C. Gen. Stat. § 24-5(b) (2003); *Porter v. Grimsley*, 98 N.C. 550, 4 S.E. 529 (1887) ("It is conceded that interest can only be charged from demand . . . with interest from the date of the summons"). Plaintiff's case commenced on 23 October 2003 when

the complaint before us was filed; the case was not pending during the period after plaintiff had voluntarily dismissed his case and before he refiled as permitted by N.C. R. Civ. P., Rule 41 (2003). Thus, the trial court erred in awarding interest from the date of the original complaint rather than from 23 October 2003. In addition, the North Carolina Administrative Code states that "[t]he state shall not be required to pay interest on any back pay award." N.C. Admin. Code Tit. 25, 1B.0425 (2003). Plaintiff cites no authority countering defendants' argument that the N.C. Administrative Code and N.C. Gen. Stat. § 24-5(b) bar an award of interest on plaintiff's back pay award. We reverse the award of interest on the judgment from 10 January 2001 and the award of interest on back pay, and remand for entry of corrected judgment.

Affirmed in part, reversed in part and remanded.

Judges WYNN and TYSON concur.